The jurisdiction of the court of equity in cases of the kind before us is undoubted. "But the mere poverty of the executor *Page 387 
does not authorize the court, against the will of the testator, to remove him by putting a receiver in his place. There must be, in addition, some maladministration or some danger of loss from the misconduct or negligence of the executor for which he will not be able to answer by reason of his insolvency. That seems to be the well-settled rule."Fairbairn v. Fisher, 57 N.C. 390. Hence, where the condition of the executor in property or credit has not been changed for the worse since the making of the will and the death of the testator, the court will not interfere. Such, it is contended by the counsel for the defendant Harris, is the case with him. He admits in his answer that at the death of his father he had been "unlucky in business" and was embarrassed with debt, but he alleges this circumstance was well known to his father when he appointed him one of his executors, and he avers that (593) his pecuniary condition has somewhat improved since then. If it were true that the full extent of his indebtedness was known to his testator at the time when he appointed him an executor, and also true that his pecuniary embarrassments had not increased since, then the court would not be authorized to remove him, nor to interfere with his management of the estate. But is that true? We think not. The bill charges that the defendant Harris had, in the lifetime of the testator, been appointed guardian of one Joseph Whiteside, a lunatic, and as such had given a bond to which the testator was one of the sureties, and that since the testator's death it had been ascertained by a committee of the county court, by which the appointment had been made, that he was indebted to his ward in the sum of $10,000. This allegation is admitted in the answer, yet the defendant does not say that he has the assets of his ward in his hands ready to be accounted for, or that he has funds of his own wherewith to pay off the debt. He states only that there were good sureties besides his father to the guardian bond. The plain inference from these admissions and statements is that he had wasted or misapplied the effects of his ward, and was unable to make good his default. This very bad condition of his affairs does not seem to have been known to his father, and, having come to light since the testator's death, fully justified the court below in refusing to dissolve the injunction, from which the appeal is taken. As the case comes before us upon an appeal from an interlocutory order, and as we do not discover any error in that order, we can only affirm it, and send a certificate to that effect to the court where the cause is still pending. Any motions for a change of the order made in the court below must be addressed to that court. (594)
Cited: Camp v. Pittman, 90 N.C. 618. *Page 388 
NOTE. — Where an executor had remained in office as such for twenty years. and had never made a return: Held, he was properly removed from his office. Armstrong v. Stowe, 77 N.C. 360. The insolvency of an executor is not a sufficient cause for requiring him to give bond, and, failing in that, for removal, unless such insolvency was unknown to the testator or occurred after his death. Neighbors v. Hamlin, 78 N.C. 42.